## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF LABOR, *et al.*, <br><br> Defendants. | Case No. 5:23-cv-00272-C <br><br> Judge Sam R. Cummings |

## DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

I.    Statutory background ...............................................................................................2

II.    Regulatory background ...........................................................................................3

        A.    The 2022 proposed rule ...............................................................................4

        B.    The 2023 final rule ......................................................................................4

III.    Procedural history ..................................................................................................7

LEGAL STANDARDS .......................................................................................................8

ARGUMENT  ......................................................................................................................8

I.    AGC, AGC Texas, and the Lubbock Chamber lack standing ...............................8

        A.    AGC, AGC Texas, and the Lubbock Chamber do not assert organizational standing. ....................................................................................................10

        B.    AGC, AGC Texas, and the Lubbock Chamber lack associational standing to challenge any part of the Rule. ...................................................................10

                1.    AGC, AGC Texas, and the Lubbock Chamber failed to identify specific members who would be harmed. .................................................10

                2.    AGC, AGC Texas, and Lubbock Chamber have not alleged harm from the secondary construction sites provision of the Rule. ...........................11

II.    JLM lacks standing to challenge the secondary construction sites provision. ...........13

III.    Plaintiffs fail to state a claim the Regulatory Flexibility Act. .......................................13

        A.    Plaintiffs improperly treat the RFA as a "substantive, not procedural" mandate. ....................................................................................................14

        B.    Plaintiffs have not alleged that they are "small entities" as required to state an RFA claim. ...............................................................................................17

CONCLUSION ..................................................................................................................19

i

## TABLE OF AUTHORITIES

**CASES**

*Alenco Commc'ns, Inc. v. FCC,*
   201 F.3d 608 (5th Cir. 2000) ............................................................................................. 14, 15

*Am. Fed'n of Tchrs. v. DeVos,*
   484 F. Supp. 3d 731 (N.D. Cal. 2020),
   *appeal filed sub nom., California v. Cardona*, No. 21-16980 (9th Cir. Nov. 24, 2021) ............................... 9

*Am. Health Care Ass'n v. Burwell,*
   217 F. Supp. 3d 921 (N.D. Miss. 2016) ................................................................................. 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................... 8

*Ass'n of Am. Physicians & Surgeons, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
   224 F. Supp. 2d 1115 (S.D. Tex. 2002) ................................................................................ 15

*Associated Fisheries, Inc. v. Daley,*
   127 F.3d 104 (1st Cir. 1997) .............................................................................................. 15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................ 8, 19

*Blum v. Yaretsky,*
   457 U.S. 991 (1982) ........................................................................................................... 9

*Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.,*
   315 F. Supp. 3d 282 (D.D.C. 2018) ..................................................................................... 19

*DaimlerChrysler v. Cuno,*
   547 U.S. 332 (2006) ........................................................................................................... 9

*E.T. Simonds Constr. Co.,*
   ARB No. 21-054, 2022 WL 1997485 (May 13, 2022) ............................................................ 6

*Fla. Growers Ass'n, Inc. v. Su,*
   No. 8:23-cv-889-CEH-CPT, 2024 WL 670464 n.17 (M.D. Fla. Jan. 5, 2024) ................................. 17

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
   695 F.3d 330 (5th Cir. 2012) .............................................................................................. 11

*Grand Canyon Air Tour Coal. v. FAA,*
   154 F.3d 455 (D.C. Cir. 1988) ............................................................................................ 16

*Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*,
   Civ. A. No. H-06-2354, 2007 WL 2872876 (S.D. Tex. Sept. 27, 2007) ................................13, 14, 15

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ....................................................................................................................11

*Huntco Pawn Holdings, LLC v. U.S. Dep't of Def.*,
   240 F. Supp. 3d 206 (D.D.C. 2016) .............................................................................................17

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) ........................................................................................................9

*Johnson v. U.S. Off. of Pers. Mgmt.*,
   783 F.3d 655 (7th Cir. 2015) ........................................................................................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ......................................................................................................................8

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*,
   82 F.4th 345 (5th Cir. 2023) .......................................................................................................10

*Lewis v. Casey*,
   518 U.S. 343 (1996) ......................................................................................................................9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................. 8, 12

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) .......................................................................................................16

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ......................................................................................................11

*NAACP v. Trump*,
   298 F. Supp. 3d 209 (D.D.C. 2018), *aff'd & remanded sub nom.*,
   *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ........................18

*Nat'l Fed'n of the Blind of Tex. v. Abbott*,
   647 F.3d 202 (5th Cir. 2011) ........................................................................................................9

*Nat'l Tel. Co-op. Ass'n v. F.C.C.*,
   563 F.3d 536 (D.C. Cir. 2009) ....................................................................................................16

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ......................................................................................................................9

*Strycker's Bay Neighborhood Council, Inc. v. Karlen*,
   444 U.S. 223 (1980) ....................................................................................................................14

iii

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...................................................................................................... 11

*Taylor v. Books a Million, Inc.*,
   296 F.3d 376 (5th Cir. 2002) ........................................................................................ 8

*Tenth St. Residential Ass'n v. City of Dall.*,
   968 F.3d 492 (5th Cir. 2020) ...................................................................................... 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................................................ 9

*United States v. Binghamton Constr. Co.*,
   347 U.S. 171 (1954) ........................................................................................................ 2

*Univs. Rsch. Ass'n, Inc. v. Coutu*,
   450 U.S. 754 (1981) ........................................................................................................ 2

*W. Wood Preservers Inst. v. McHugh*,
   925 F. Supp. 2d 63 (D.D.C. 2013) ..................................................................... 18, 19

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   485 F. Supp. 3d 1 (D.D.C. 2020) ................................................................................ 9

*Zero Zone, Inc. v. United States Dep't of Energy*,
   832 F.3d 654 (7th Cir. 2016) ...................................................................................... 14

**STATUTES**

5 U.S.C. § 601 ................................................................................................................ 17, 18

5 U.S.C. §§ 601 *et seq.* ............................................................................................................ 7

5 U.S.C. §§ 601-604 ............................................................................................................ 13

5 U.S.C. § 604 .................................................................................................... 13, 14, 15

5 U.S.C. § 605 ...................................................................................................................... 13

5 U.S.C. § 611 ........................................................................................................ 14, 17, 19

15 U.S.C. § 632 .................................................................................................................... 18

23 U.S.C. § 113 ...................................................................................................................... 1

40 U.S.C. § 3141 .................................................................................................................... 2

40 U.S.C. §§ 3141 *et seq.* ...................................................................................................... 2

40 U.S.C. § 3142 ....................................................................................................... 1, 2

40 U.S.C. § 3145 ........................................................................................................... 2


## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III ......................................................................................................... 8


## REGULATIONS

13 C.F.R. § 121.103 ...................................................................................................... 18

13 C.F.R. § 121.201 ...................................................................................................... 18

29 C.F.R. § 1.6 (2022) ................................................................................................ 3, 7

29 C.F.R. § 5.2 (2022) ............................................................................................ *passim*

29 C.F.R. § 5.5 ................................................................................................................ 7

Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted
    Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject
    to the Contract Work Hours and Safety Standards Act),
    65 Fed. Reg. 80,268 (Dec. 20, 2000) ...................................................................... 5

Procedures for Predetermination of Wage Rates,
    46 Fed. Reg. 41,444 (Aug. 14, 1981) ...................................................................... 4

Procedures for Predetermination of Wage Rates,
    47 Fed. Reg. 23,644 (May 28, 1982) ....................................................................... 4

Reorganization Plan No. 14 of 1950,
    15 Fed. Reg. 3176, *reprinted as amended in* 5 U.S.C. app. 1, *and in* 64 Stat. 1267 .................... 3

Updating the Davis-Bacon and Related Acts Regulations,
    88 Fed. Reg. 57,526 (Aug. 23, 2023) ............................................................... *passim*

Updating the Davis-Bacon and Related Acts Regulations,
    87 Fed. Reg. 15,698 (Mar. 18, 2022) ....................................................................... 4

## INTRODUCTION

Congress enacted the Davis-Bacon Act (DBA) to protect construction workers on federal projects from substandard wages. 40 U.S.C. § 3142(c). In order to preserve local wage standards, the Act requires federal construction contractors to pay "all mechanics and laborers employed directly on the site of the work," at minimum, the prevailing wage in the local area. Congress subsequently incorporated DBA requirements into numerous statutes under which federal agencies provide grants, loans, loan guarantees, or other assistance to construction projects (Related Acts).[1] The U.S. Department of Labor (DOL or Department) recently undertook notice-and-comment rulemaking to update various aspects of the DBA's and the Related Acts' (together, DBRA) implementing regulations. *See* Updating the Davis-Bacon and Related Acts Regulations, 88 Fed. Reg. 57,526 (Aug. 23, 2023) (Final Rule or Rule). As relevant in this case, for example, the Rule makes modest revisions to reflect modern developments in construction such as the ability for significant parts of buildings or even whole buildings to be constructed away from the primary construction site. Specifically, the Rule treats such a secondary site as a DBRA-covered "site of the work" during the weeks or months it is dedicated entirely, or almost entirely, to constructing a significant portion of a DBRA-covered building or work. The Rule also clarifies and codifies existing practice regarding truck drivers who transport construction materials within, to, and from a construction site. Finally, the Rule makes it easier for workers to receive the DBRA's protections—and for contractors to be reimbursed for related costs— when contract clauses are omitted from a covered contract.

Plaintiffs are two construction trade associations, Associated General Contractors of America (AGC) and Associated General Contractors of Texas (AGC Texas); the Lubbock Chamber of Commerce; and a construction company, J. Lee Mulligan, Inc. (JLM). They allege that, in promulgating

---

[1] *E.g.*, 23 U.S.C. § 113(a) (requiring the payment of prevailing wages in accordance with the DBA for construction work performed on federal-aid highway projects).

these parts of the Rule, Defendants violated the Administrative Procedure Act (APA) and the Regulatory Flexibility Act (RFA). However, in order to bring this suit, Plaintiffs first have to plausibly allege Article III standing and they have not done so. AGC, AGC Texas, and the Lubbock Chamber have not identified specific members with standing to challenge each of the Rule's provisions at issue here, as required for them to have associational standing. In addition, no Plaintiff has plausibly alleged non-speculative harm from the secondary construction site provision. Nor has any Plaintiff plausibly alleged a cause of action under the RFA because review under that statute is limited to purely procedural, not substantive, errors, and Plaintiffs have not identified any procedural error in DOL's analysis. Thus, the Court should dismiss all of AGC's, AGC Texas's, and the Lubbock Chamber's claims for lack of jurisdiction. The Court should similarly dismiss JLM's RFA claim (Count IV), as well as its other claims (Counts I-III) to the extent they challenge the secondary construction site provision.

## BACKGROUND

### I.    Statutory background

The DBA, as amended, 40 U.S.C. § 3141 *et seq.*, requires the payment of locally prevailing wages to workers on federal construction contracts who are "employed directly on the site of the work." 40 U.S.C. § 3142(c)(1). The Supreme Court has described the DBA as "a minimum wage law designed for the benefit of construction workers." *United States v. Binghamton Constr. Co.*, 347 U.S. 171, 178 (1954); *see* 40 U.S.C. §§ 3141, 3142. The Act "protect[s] local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area." *Univs. Rsch. Ass'n, Inc. v. Coutu*, 450 U.S. 754, 773–74 (1981) (quoting H. Comm. on Educ. and Lab., 87th Cong., 2d Sess., Legislative History of the Davis-Bacon Act 1 (Comm. Print 1962)).

Congress has empowered the Secretary of Labor to "prescribe reasonable regulations for contractors and subcontractors engaged" in DBRA contracts, 40 U.S.C. § 3145(a). *See also*

2

Reorganization Plan No. 14 of 1950, 15 Fed. Reg. 3176, *reprinted as amended in* 5 U.S.C. app. 1, *and in* 64 Stat. 1267. The Department's regulations implementing the DBRA are codified at 29 C.F.R. parts 1, 3, and 5.[2] Only a handful of specific provisions in part 5—a few definitions in 29 C.F.R. § 5.2 and the operation-of-law provision in § 5.5(e)—are at issue in this case.

## II.    Regulatory background

The Wage and Hour Division (WHD), an agency within DOL, administers the DBRA in partnership with the federal agencies that enter into DBRA-covered construction contracts or provide DBRA-covered federal assistance to state and local governments and other funding recipients. Final Rule, 88 Fed. Reg. at 57,530. WHD determines the prevailing wage rates for different types of construction jobs in local areas around the country based on survey data collected from contractors and other interested parties. *Id.* If a contract is covered by the DBRA, it must include the applicable wage rates and other DBRA-required clauses. While a contract is in effect, contractors must provide to the contracting agency certified payrolls demonstrating compliance. *Id.* at 57,530–31.

WHD and contracting agencies have authority to conduct investigations of covered contracts. *Id.* If a contractor violates the DBRA, the contracting agency may recover underpayments, suspend payments on the contract until the withheld amount is enough to compensate workers for the underpayments, and, if the relevant contract does not have sufficient funds for that purpose, "cross-withhold[]" funds owed to the contractor on other DBRA-covered contracts. *Id.* If WHD determines that DBRA wage determinations and contract clauses were omitted from a contract that should have been covered by the DBRA, the regulations have required contracting parties to modify the contract so that prevailing wages apply retroactively, and the contractor is reimbursed if that causes an increase in wages. *Id* (citing 29 C.F.R. § 1.6(f) (2022)).

---

[2] Unless otherwise noted, all citations to the Code of Federal Regulations (C.F.R.) are to the current (post-Rule) version.

### A.      The 2022 proposed rule

On March 18, 2022, the Department issued a notice of proposed rulemaking (NPRM) that proposed a variety of different changes to its DBRA regulations "to provide greater clarity and enhance their usefulness in the modern economy." Updating the Davis-Bacon and Related Acts Regulations, 87 Fed. Reg. 15,698 (Mar. 18, 2022) (Proposed Rule). DOL had last undertaken a comprehensive review of its DBRA regulations in 1981–1982.[3] Since then, the agency noted, "Congress has expanded the reach of the Davis-Bacon labor standards significantly"; they now apply to approximately $217 billion in construction spending per year and provide minimum wage rates for over 1.2 million workers. *Id.* at 15,699. The agency also explained that in the intervening forty years, the federal contracting system had undergone significant changes; the agency had received feedback from stakeholders, the Government Accountability Office (GAO), and DOL's Office of the Inspector General regarding its wage survey and wage determination process; and the agency had encountered enforcement challenges. *Id.* Thus, DOL identified a need to review and modernize the DBRA's implementing regulations. To that end, the Department proposed various changes to its existing regulations. *See generally* 87 Fed. Reg. 15,698.

### B.      The 2023 final rule

During a 60-day comment period, DOL received more than 40,000 written comments expressing a wide variety of views regarding the proposed changes. Final Rule, 88 Fed. Reg. at 57,527. Most of the comments favored some or all of the proposed changes. *Id.* On August 23, 2023, having considered the comments, DOL promulgated the Final Rule, which adopted the changes in the Proposed Rule with some modifications. *Id.* at 57,528. The Final Rule took effect on October 23, 2023. *Id.* at 57,526. Plaintiffs challenge a few specific provisions of the Rule, now codified at 29 C.F.R.

---

[3] Procedures for Predetermination of Wage Rates, 46 Fed. Reg. 41,444 (Aug. 14, 1981) (1981 NPRM); Procedures for Predetermination of Wage Rates, 47 Fed. Reg. 23,644 (May 28, 1982) (1982 Final Rule).

§§ 5.2 and 5.5(e):

   ***Secondary construction sites.*** The Rule makes a modest change to the regulatory definition of "site of the work" to better account for modern construction technologies that enable some companies to "construct entire portions of public buildings or works offsite, leaving only assembly or placement of the building or work remaining." 88 Fed. Reg. at 57,616. DOL had addressed this issue in a 2000 rulemaking, when it identified examples of significant portions of buildings being constructed at one site and transported to and assembled at another. One example was a dam project where "two massive floating structures"—"each about the length of a football field"—would make up the vast bulk of the new dam. Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act), 65 Fed. Reg. 80,268, 80,273 (Dec. 20, 2000). The structures were constructed upriver and then floated downriver and submerged. *Id.* Another example was the construction of a 300-foot mobile service tower, which was composed of modular units, the largest of which was equivalent in size to a three-story building, that were transported by barge and assembled 1,000 miles away into the tower. *Id.* Under the 2000 rule, "site of the work" was defined to include "the physical place or places where the building or work called for in the contract will remain" as well as, in relevant part, "any other site[] where a significant portion of the building or work is constructed, *provided that such . . . site is . . . established specifically for the performance of the contract or project.*" 29 C.F.R. § 5.2 (2022) (emphasis added).

   Under the 2023 Rule, secondary sites are now defined as "any other site(s) where a significant portion of the building or work is constructed, . . . *provided* . . . that the site is either established specifically for the performance of the contract or project, *or is dedicated exclusively, or nearly so, to the performance of the contract or project for a specific period of time.*" 29 C.F.R. § 5.2 (emphasis added). The Proposed Rule would have adopted a broader definition, but DOL made the incremental change in

the 2023 Final Rule quite "narrow," to address commenters' concerns that it would be infeasible for modular construction facilities that work on multiple projects at a time to track time and wage rates, and that the potential administrative costs would deter small businesses from working on federal projects. 88 Fed. Reg. at 57,618. Because "modular construction facilities typically work on multiple projects at a time and would therefore be beyond the scope of this provision," DOL expects the Rule to have "limited" impact on the vast majority of construction projects. *Id.*

**Material suppliers and truck drivers.** "While not explicitly set out in the statute, the DBA has long been understood to exclude from coverage employees of bona fide 'material suppliers' or 'materialmen.'" *Id.* at 57,615. The Rule clarifies which employers qualify for the "material supplier" exemption. Specifically, the Rule limits applicability of this exemption to companies whose only contractual responsibilities are material supply and related incidental activities. *See* 29 C.F.R. § 5.2 (definition of "material supplier"); 88 Fed. Reg. at 57,623.

The Rule also codifies preexisting guidance regarding truck drivers, requiring contractors to pay DBRA wages to truck drivers and truck drivers' assistants for activities such as "loading, unloading, or waiting for materials to be loaded or unloaded" at the site of the work, "but only where the driver or driver's assistant's time spent on the site of the work is not *de minimis*." 29 C.F.R. § 5.2 (emphasis added) (definition of "covered transportation" within the definition of "construction, prosecution, completion, or repair"). This longstanding policy, now reflected in the regulations, accounts for the fact that "[truck] drivers can spend significant portions of their day on the site of the work." 88 Fed. Reg. at 57,624-26; *see, e.g., E.T. Simonds Constr. Co.*, ARB No. 21-054, 2022 WL 1997485 (May 13, 2022) (finding that DBA covered truck drivers who spent 15 minutes per hour of their workday, or 25 percent of their time, on the worksite).

**Operation of law.** Third, the Rule changes the administrative procedure for enforcing the DBRA when its labor standards or wage determinations are "wrongly omitted from a covered

contract." *Id.* at 57,661. Previously, if the wage determination or other relevant DBRA clause were omitted from a contract, the regulations provided a process by which the deficient contract would be amended or superseded to retroactively include the correct wage, and the contractor would be compensated for any increases in wages resulting from that modification. 29 C.F.R. § 1.6(f) (2022). Over the years, DOL learned that this regulatory framework created several significant enforcement challenges, including: (1) confusion over the correct approach when a contracting agency has mistakenly omitted a wage determination, (2) "significant delays" in resolving omissions that harmed workers, and (3) unique situations when modifying an existing contract could run afoul of non-DBRA statutes. 88 Fed. Reg. at 57,661. To address those problems, the Rule maintains the procedure at 29 C.F.R. § 1.6(f) and extends it to make DBRA labor standards clauses and wage determinations "effective 'by operation of law' in circumstances where they [were] wrongly omitted from a covered contract." *Id.* at 57,662. The Rule also includes two provisions to protect contractors and federal agencies. First, contracting agencies must "compensate prime contractors for any increases in wages resulting from a post-award incorporation of a contract clause or wage determination by operation of law." *Id.* That is, prime contractors are to be made whole if an agency includes the incorrect wage (or no minimum wage at all) in a DBRA-covered contract and the covered workers are, as a result, owed more than initially paid. Second, contracting agencies are allowed to request an exemption from the operation-of-law provision. *Id.* These changes are reflected in 29 C.F.R. § 5.5(e).

### III.    Procedural history

Plaintiffs filed a Complaint in this Court on November 7, 2023, after the Rule took effect. Compl., ECF No. 1. They subsequently amended the Complaint on December 18, 2023. Pls.' First Am. Compl., ECF No. 5 (FAC). The First Amended Complaint alleges that, in promulgating the challenged Rule provisions, 29 C.F.R. §§ 5.2 and 5.5(e), Defendants exceeded their constitutional and statutory authority (Counts I and II) and acted arbitrarily and capriciously (Count III), all in violation

of the APA. FAC ¶¶ 61-81. They also allege that the Rule violates the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, which requires agencies to consider the impact of certain regulations on small entities, by not taking suggestions submitted by commenters during the notice-and-comment process and not taking adequate steps to minimize the Rule's impact on small businesses. *Id.* ¶¶ 82-88 (Count IV).

## LEGAL STANDARDS

A Federal Rule of Civil Procedure 12(b)(1) motion tests whether the court has jurisdiction. Because "[f]ederal courts are courts of limited jurisdiction[, t]hey possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree. . . . It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept factual allegations as true and draw reasonable inferences in plaintiff's favor but need not credit "conclusory allegations or legal conclusions masquerading as factual conclusions." *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

## ARGUMENT

### I.      AGC, AGC Texas, and the Lubbock Chamber lack standing.

Article III limits the judicial power to deciding "Cases" and "Controversies," U.S. Const. art. III, § 2. To that end, a plaintiff must demonstrate three elements to meet the "irreducible constitutional minimum of standing": (1) "the plaintiff must have suffered an injury in fact which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that injury must be

"traceable" to the defendant's challenged actions; and (3) the injury must be "likely . . . redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up and citations omitted). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).

     "Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006). For that reason, a "court must analyze Plaintiffs' standing to challenge each *provision* of law at issue." *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added); *Blum v. Yaretsky*, 457 U.S. 991 (1982) (plaintiff had standing to challenge one aspect of statute but not others). The requirement to analyze standing "on a provision-by-provision basis . . . can be tedious" when a plaintiff brings a "sweeping challenge." *Gee*, 941 F.3d at 165. "But it's what Article III requires," *id.*, because "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, . . . to which he has not been subject," *Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (quoting *Blum*, 457 U.S. at 999) (first alteration in original). Courts have applied this principle to challenges to agency rules and regulations, as well. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[T]he right to complain of *one* administrative deficiency" does not "automatically confer[] the right to complain of *all* administrative deficiencies."); *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) ("[E]ven if the Rule does place an administrative burden on plaintiffs, that does not give them standing to challenge the aspects of the Rule that they allege are illegal, which are unrelated to the imposition of an administrative burden."); *Am. Fed'n of Tchrs. v. DeVos*, 484 F. Supp. 3d 731, 743 (N.D. Cal. 2020) (rejecting plaintiffs' argument that "because they challenge various aspects of [a] [r]ule, *any* harm caused by *any* aspect of the rule confers standing"), *appeal filed sub nom., California v. Cardona*, No. 21-16980 (9th Cir. Nov. 24, 2021); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of*

*Health & Hum. Servs.*, 485 F. Supp. 3d 1, 24–34 (D.D.C. 2020) (analyzing whether plaintiff had standing to challenge each provision of rule, because standing is not dispensed in gross).

"An organization . . . can establish the first standing element, injury-in-fact, under two theories: 'associational standing' or 'organizational standing.'" *Tenth St. Residential Ass'n v. City of Dall.*, 968 F.3d 492, 500 (5th Cir. 2020). "Associational standing requires that the individual members of the group each have standing and that 'the interest the association seeks to protect be germane to its purpose.'" *Id.* Under the organizational standing theory (not at issue here), "[a]n organization can establish standing in its own name if it meets the same standing test that applies to individuals." *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 351 (5th Cir. 2023) (cleaned up).

### A. AGC, AGC Texas, and the Lubbock Chamber do not assert organizational standing.

AGC, AGC Texas, and the Lubbock Chamber, two trade associations and a business federation, do not allege any injury to themselves, only to their members. The section of the FAC discussing "Injury to the Plaintiffs," for instance, alleges harm to "prime contractors" and "subcontractors" but not to AGC, AGC Texas, or the Lubbock Chamber themselves, as they are not themselves prime contractors or subcontractors. *See* FAC ¶¶ 51-60; *see also id.* ¶ 10 (AGC is a "trade association") *id.* ¶ 11 (AGC Texas is a chapter of AGC); *id.* ¶ 12 (Lubbock Chamber is a "business federation"). Similarly, the FAC contains a section labeled "Association Standing," but none concerning organizational standing.  *See* FAC ¶¶ 17-21. Thus, the complaint cannot be fairly read to assert organizational standing as to AGC, AGC Texas, or the Lubbock Chamber.

### B. AGC, AGC Texas, and the Lubbock Chamber lack associational standing to challenge any part of the Rule.

#### 1. AGC, AGC Texas, and the Lubbock Chamber failed to identify specific members who would be harmed.

Nor have AGC, AGC Texas, and Lubbock Chamber adequately alleged associational standing. The associational standing doctrine permits an organization to sue on behalf of its members when

three criteria are met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). With regard to the first prong, would-be organizational plaintiffs must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) ("An organization lacks standing if it fails to adequately allege that there is a threat of injury to any individual member of the association and thus fails to identify even one individual member with standing." (cleaned up)).

The FAC does not identify a single member of AGC, AGC Texas, or Lubbock Chamber who has been or would be harmed. This failure alone is fatal to each of these Plaintiffs' assertion of associational standing. *Summers*, 555 U.S. at 498; *Funeral Consumers All.*, 695 F.3d at 344; *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (rejecting associational-standing theory where "there is no evidence in the record showing that a specific member" of the organization was injured). The FAC alleges that each organization has numerous members and that each organization has "contractor members that perform work on projects which are subject to the DBA." FAC ¶¶ 10-12, 18. However, Supreme Court precedent squarely forecloses a finding of associational standing based on "the organization's self-description of the activities of its members" and the "statistical probability"—even where it is "likely"—that some members would be concretely injured. *Summers*, 555 U.S. at 497–98. Further, while the FAC alleges that Plaintiff JLM is a contractor, JLM is not alleged to be a member of AGC, AGC Texas, or the Lubbock Chamber. *See* FAC ¶ 13. Accordingly, none of the associational plaintiffs has established standing to bring their claims.

**2. AGC, AGC Texas, and Lubbock Chamber have not alleged harm from the secondary construction sites provision of the Rule.**

AGC, AGC Texas, and Lubbock Chamber lack associational standing to challenge certain provisions of the Rule for the separate reason that they have not adequately alleged that their (unnamed) members face actual or imminent harm from those provisions. In particular, these Plaintiffs have not plausibly alleged that their members will be harmed by what they call the "permanent fabrication facilities" provision. Compl. ¶¶ 40–43. As discussed above, the Rule made a very narrow change to this aspect of the regulatory scheme. Because the pre-Rule version of the regulation already covered secondary construction sites if they were established specifically for a DBRA-covered project or contract, the revised regulation only makes a difference for sites that are *not* specifically established for a DBRA-covered project or contract *and* that are at some point dedicated exclusively or nearly so to the performance of a single DBRA-covered project or contract for a period of weeks, months, or more. *Compare* 29 C.F.R. § 5.2(*l*)(1) (2022) *with* 29 C.F.R. § 5.2 (definition of "site of the work," ¶ (1)(ii)). *See also* 88 Fed. Reg. at 57,618.

Perhaps reflecting the difficulty of ascertaining whether any members actually will be harmed by this incremental change, AGC, AGC Texas, and the Lubbock Chamber allege that "[s]ome of [their] contractor members purchase structures for specific use and installation on a DBA-covered project" and that "[t]hose structures *may* be manufactured at an off-site facility that is dedicated exclusively, or nearly so, to the performance of a DBA contract or project for a specific period of time lasting weeks, months or more." FAC ¶ 18 (emphasis added). To have Article III standing, however, a plaintiff must be suffering an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. Plaintiffs' chosen terms "some" and "may be," however, indicate that any impact from this provision on any of these Plaintiffs' specific members is uncertain, at best.

Likewise, the activities in which Plaintiffs allege their members engage are considerably

12

broader than what the Rule actually covers. The Rule does not apply to all facilities that "may . . . manufacture" a "structure[] for specific use and installation on a DBA-covered project." FAC ¶ 18. Rather, the Rule applies only if the "structure" constitutes a "significant portion" of the public works being constructed, i.e., "one or more entire portion(s) or module(s) of the building or work. . . with minimal construction work remaining other than the installation and/or final assembly of the portions or modules at the place where the building or work will remain." 29 C.F.R. § 5.2. Absent specific allegations that their members face actual or imminent harm because they perform work newly covered by the Rule's secondary construction site provision, Plaintiffs lack standing to challenge it.

## II.   JLM lacks standing to challenge the secondary construction sites provision.

JLM does not allege that it is impacted by this provision, as it does not allege that it constructs significant portions of buildings at secondary sites at all. *See* FAC ¶ 13. Thus, JLM does not have standing to challenge this provision in the Rule.

***

Because no Plaintiff has standing to challenge the secondary worksite provision at all, that portion of Plaintiffs' Counts I, II, and III should be dismissed.

## III.   Plaintiffs fail to state a claim the Regulatory Flexibility Act.

The RFA "requires federal agencies to consider the effect that agency regulations will have on small entities, analyze effective alternatives that may minimize a regulation's impact on such entities, and make the analyses available for public comment." *Grocery Servs., Inc. v. USDA Food & Nutrition Servs.*, Civ. A. No. H-06-2354, 2007 WL 2872876, at *10 (S.D. Tex. Sept. 27, 2007); 5 U.S.C. §§ 601–604. Final rules that "have a significant economic impact on a substantial number of small entities" must include a "final regulatory flexibility analysis," covering six identified topics. 5 U.S.C.

13

§§ 604(a)(1)–(6), 605(b).[4]

Judicial review under the RFA is limited. Only "a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review[.]" 5 U.S.C. § 611(a)(1). In addition, "[t]he RFA is a procedural rather than substantive agency mandate." *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000). That is, the RFA does not require agencies to choose the alternatives that are "less burdensome for small businesses"; it only requires "that agencies explain why any such alternatives were rejected." *Zero Zone, Inc. v. United States Dep't of Energy*, 832 F.3d 654, 683 (7th Cir. 2016) (cleaned up).[5] Accordingly, "[t]he proper question for [the reviewing] Court is not whether the [agency] reached the 'correct' determination, but whether the agency followed the procedural steps set out in the RFA." *Grocery Servs.*, 2007 WL 2872876, at *10 (dismissing RFA claim under Rule 12(b)(6)).

Plaintiffs fail to state a legally cognizable RFA claim for two independent reasons. First, their allegations impermissibly attack substantive, not procedural aspects of DOL's RFA analysis. Second, Plaintiffs have not alleged that they are small entities as required to state a claim.

### A. Plaintiffs improperly treat the RFA as a "substantive, not procedural" mandate.

Plaintiffs allege that DOL violated the RFA because it declined to adopt commenters' suggestions to lessen the impact of the Rule's operation of law provision and "to expand the

---

[4] The six topics are: (1) a statement of the need for the rule and its objectives, (2) a statement of significant issues raised by public comments in response to the agency's initial regulatory flexibility analysis, the agency's assessment of those issues, and any relevant changes reflected in the final rule, (3) the agency's response to any comments filed by the Chief Counsel for Advocacy of the Small Business Administration, and any relevant changes in the final rule, (4) a description and estimate of the number of affected small entities, (5) an estimate of reporting, recordkeeping, and other compliance requirements of the rule, and (6) a description of steps the agency has taken to minimize the impact on small businesses and the reasons that any alternatives were rejected. 5 U.S.C. § 604(a).

[5] The RFA is similar in this respect to the National Environmental Policy Act (NEPA). While NEPA requires agencies to consider potential environmental impacts, it does not require agencies to "elevate environmental concerns over other appropriate considerations." *Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227 (1980) (per curiam).

application of the *de minimis* rule to all covered workers and activities at the site of work, not just truck drivers who are loading and unloading materials." *See* FAC ¶¶ 44-46, 85-87. Even accepting these allegations as true, they attack the "substantive, not procedural" actions of the agency, and thus do not state a claim under the RFA. *Grocery Servs.*, 2007 WL 2872876, at *10.

The RFA does not require agencies to adopt commenters' suggestions. Rather, an agency is only required to consider public comments, including any comments from the Chief Counsel for Advocacy of the Small Business Administration, and to state "any changes made in the proposed rule as a result of such comments." *See* 5 U.S.C. § 604(a)(2)-(3). Similarly, while the agency must consider alternatives that would lessen the impact on small businesses, it is not required to adopt those alternatives; it need only explain why it has rejected any. *See id.* § 604(a)(6). As courts in this Circuit have recognized, "the RFA 'is a procedural rather than substantive agency mandate,' prescribing no specific outcome and imposing no requirement that an agency adopt substantive measures to reduce the impact of regulations on small business." *Am. Health Care Ass'n v. Burwell*, 217 F. Supp. 3d 921, 941 (N.D. Miss. 2016); *see also Grocery Servs.*, 2007 WL 2872876, at *10 ("As noted by the Fifth Circuit in *Alenco,* the RFA is a purely procedural statute, and provides no substantive relief or rights."); *Ass'n of Am. Physicians & Surgeons, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 224 F. Supp. 2d 1115, 1128 (S.D. Tex. 2002), *aff'd,* 67 F. App'x 253 (5th Cir. 2003). Courts "review only to determine whether an agency has made a 'reasonable, good-faith effort' to carry out the [procedural] mandate of the RFA." *Alenco Commc'ns*, 201 F.3d at 625 (quoting *Associated Fisheries, Inc. v. Daley*, 127 F.3d 104, 114 (1st Cir. 1997)).

Here, it is plain from the face of the FAC and the Rule that DOL satisfied the RFA's procedural requirements. In a seven-page, single-spaced discussion of the comments received on the operation of law provision, 88 Fed. Reg. at 57,663-70, DOL specifically considered suggestions from each of the commenters listed in the FAC and explained why it was not adopting them. *Compare* FAC ¶ 45 *with, e.g.,* 88 Fed. Reg. at 57,664 ("Several commenters, including AFP-I4AW, ABC, CC&M, IEC,

15

the SBA Office of Advocacy, and the group of U.S. Senators, opposed the operation-of-law proposal, arguing that it does not give contractors sufficient notice of the applicability of DBA requirements"); *id.* at 57,666 (explaining that "those that contract with the government are charged with having knowledge of published regulations" and citing cases); *id.* at 57,665, 57,669 (acknowledging and responding to Plaintiff AGC's request for further clarifications regarding compensation for contractors where the operation-of-law provision is invoked). Indeed, DOL mentioned the Wiley Rein comment (FAC Ex. 6) no fewer than 23 times in the operation of law discussion in the preamble. Similarly, DOL considered AGC's suggestion that "the Department should expand application of the *de minimis* principles to include all covered workers and activities, not only truck drivers," and explained that it was declining that suggestion because, among other things, it went beyond the scope of the proposed rule. *Id.* at 57,625-27.[6]

The FAC also alleges that "DOL failed to adequately analyze the new small businesses covered by DBA, failed to adequately analyze the administrative burdens and compliance costs of the Final Rule, and failed to examine less burdensome alternatives," essentially parroting the subheadings in the SBA comment. *Compare* FAC ¶¶ 46, 85 *with* FAC Ex. 6 at 4-11. But the FAC itself acknowledges that DOL responded to the SBA comment, FAC ¶ 87 (quoting 88 Fed. Reg. at 57,666), and indeed, DOL responded to each of the issues raised in SBA's comment in depth. 88 Fed. Reg. at 57,717-21.

While Plaintiffs may disagree with the substance of DOL's responses to certain comments, they have not identified any procedural defect with respect to the RFA's requirements. That forecloses their RFA claim. *See Nat'l Tel. Co-op. Ass'n v. F.C.C.*, 563 F.3d 536, 540 (D.C. Cir. 2009) (holding that, "[b]ecause the analysis at issue here undoubtedly addressed all of the legally mandated subject areas,

---

[6] "[T]he logical-outgrowth rule requires the [proposed rule] to provide 'fair notice' of the eventual Final Rule." *Mock v. Garland*, 75 F.4th 563, 583 (5th Cir. 2023). If an agency goes beyond the scope of the proposed rule in the final rule, it risks having the final rule set aside by a court for violation of this requirement.

it complies" with the "[p]urely procedural" requirements of the RFA, and analyzing the substantive reasonableness of the analysis separately under the APA); *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 470–71 (D.C. Cir. 1988) (rejecting RFA challenge where agency analyzed "the economic impact of the proposed rule on small businesses" and "responded to comments submitted by the Small Business Administration"); *Huntco Pawn Holdings, LLC v. U.S. Dep't of Def.*, 240 F. Supp. 3d 206, 229–30 (D.D.C. 2016) (rejecting RFA challenge where the complaint "essentially argue[d] that the [agency's] decision was wrong, and that it should have accepted [SBA's] suggestion in full," because "it is not the Court's role to make the determination" and the agency's response to the SBA's comment "satisfie[d] the RFA's purely procedural requirements" (cleaned up)).

## B.    Plaintiffs have not alleged that they are "small entities" as required to state an RFA claim.

The RFA claim should also be dismissed because none of the Plaintiffs have adequately alleged that they are small entities, as required to state an RFA claim. 5 U.S.C. § 611. A "small entity" is defined in the RFA as a "small business," "small organization," or "small governmental jurisdiction," which in turn each have their own definitions under the statute. *Id.* § 601.

Based on the allegations in the FAC, none of the Plaintiffs are small organizations. A "small organization" is a "not-for-profit enterprise which is independently owned and operated and is not dominant in its field." 5 U.S.C. § 601(4). None of the Plaintiffs have alleged that they are non-profits, nor have they alleged any facts about their ownership and operation. Also, AGC, AGC Texas, and the Lubbock Chamber's self-descriptions indicate that they are dominant in their field. AGC, for example, alleges that it has 27,000 members in 89 chapters across the country, that it "has served the construction industry since 1918, and [that] over time, it has become the recognized leader of the industry in the United States." FAC ¶ 10. AGC Texas emphasizes that it has "over 650 members" and has been around for "nearly 100 years." *Id.* ¶ 11. The Lubbock Chamber touts that it is the "largest business federation on the South Plains of Texas, with over 2,000 members who employ over 79,000

workers." *Id.* ¶ 12. *See Fla. Growers Ass'n, Inc. v. Su*, No. 8:23-cv-889-CEH-CPT, 2024 WL 670464, at

*18 n.17 (M.D. Fla. Jan. 5, 2024) ("general description[s]" of plaintiff organizations were "inadequate"

to establish a cause of action under the RFA where the complaint "fail[ed] to demonstrate, among

other things, that the Plaintiffs meet the requirement that they are 'not dominant in [their] field'" and,

"if anything, . . . suggest[ed] the opposite" (quoting 5 U.S.C. § 601(3), (4)); *NAACP v. Trump*, 298 F.

Supp. 3d 209, 235–36 (D.D.C. 2018) (similar), *aff'd & remanded sub nom., Dep't of Homeland Sec. v. Regents

of the Univ. of Cal.*, 140 S. Ct. 1891 (2020); *W. Wood Preservers Inst. v. McHugh*, 925 F. Supp. 2d 63, 75

(D.D.C. 2013) (dismissing RFA claims where trade association "Plaintiffs have not alleged [in their

complaint] that they themselves are small entities covered by the RFA.").

 The term "small business" has the same meaning as "small business concern" under section 3

of the Small Business Act: a business concern that "is independently owned and operated and [that]

is not dominant in its field of operation." 5 U.S.C. § 601(3); Small Business Act § 3, 15 U.S.C.

§ 632(a)(1). Section 3 of the Small Business Act also authorizes the Small Business Administration to

"specify detailed definitions or standards by which a business concern may be determined to be a

small business concern for the purposes of this chapter or any other Act." 15 U.S.C. § 632(a)(2)(A).

The SBA has duly established different size standards for businesses in different industries and sub-

industries, typically based on number of employees or annual receipts. *See* 13 C.F.R. §§ 121.103(a)(6),

121.201. For the same reasons that Plaintiffs have not adequately alleged that they are small

organizations, they have not adequately alleged that they are small businesses. In addition, Plaintiff

JLM has not alleged any facts to show that it fits the SBA's definition of a small business.

 The FAC does assert that "Lubbock Chamber members include many small entities within

the meaning of the [RFA]." FAC ¶¶ 12, 20. But this barebones statement is insufficient to make the

Lubbock Chamber a proper RFA plaintiff in this case for multiple reasons. First, the plain text of the

statute allows only a "small entity" to seek judicial review. *See NAACP*, 298 F. Supp. 3d at 235. But,

as discussed, the Lubbock Chamber has not established that it itself is a small entity. And there is no language in the statute that authorizes an entity that is not itself "small" to nevertheless bring suit on behalf of its small entity members.[7] Second, even setting that issue aside, to survive a motion to dismiss, a plaintiff needs to allege facts; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, the complaint contains no allegations regarding Lubbock Chamber members' ownership and operation, level of dominance in their field, or number of employees or annual receipts (as relevant); there is only the sole, conclusory statement that they are "small." Finally, to bring an RFA claim, an entity must be not just small but also adversely affected or aggrieved by the Rule. 5 U.S.C. § 611. While the FAC alleges that the Lubbock Chamber, AGC, and AGC Texas have contractor members who work on DBA-covered projects, FAC ¶¶ 18-19, it does not allege that Lubbock Chamber has members who are both small entities *and* work on DBA-covered projects (and who are affected or aggrieved by the Rule).

Because none of the Plaintiffs have sufficiently alleged that they are small entities—let alone small entities that are adversely affected or aggrieved by the Rule—none can challenge the Rule under the RFA, the RFA claim must be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss for lack of standing all of Plaintiffs AGC, AGC Texas, and Lubbock Chamber's claims, as well as Plaintiff JLM's claim regarding secondary construction sites. The Court should also dismiss the RFA claims in their entirety for failure to state a claim.

---

[7] A few district courts have assumed that associations can sue on behalf of their small-entity members in a representational capacity under the RFA, but in these cases, the issue does not appear to have been litigated. *See, e.g.*, *Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.*, 315 F. Supp. 3d 282, 287 (D.D.C. 2018) (indicating a cattlemen's association meets the RFA's small-entity requirement because it "represent[s] numerous small livestock operations that meet the RFA definition of 'small entity,' . . . which the Defendants d[id] not dispute"); *W. Wood Preservers Inst.*, 925 F. Supp. 2d at 75 n.3.

Dated: March 27, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
ARJUN MODY (DC Bar No. 90013383)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005
Tel: (202) 531-1325 (Liao)
Tel: (202) 451-7723 (Mody)
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov
arjun.a.mody@usdoj.gov

*Counsel for Defendants*