UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA; ASSOCIATED GENERAL CONTRACTORS OF TEXAS; LUBBOCK CHAMBER OF COMMERCE; and J. LEE MILLIGAN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF LABOR and JULIE SU, in her official capacity as Acting U.S. Secretary of Labor, <br><br> Defendants. | Case No. 5:23-cv-00272-C |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Robert R. Roginson
CA Bar No. 51437
400 S. Hope Street, Suite 1200
Los Angeles, California 90071
213.457.5873 Direct
robert.roginson@ogletree.com
LEAD COUNSEL FOR PLAINTIFFS

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Jeffrey C. Londa
State Bar No. 12512400
500 Dallas Street, Suite 3000
Houston, Texas 77002
Office: (713) 655-5750
Fax: (713) 655-0020
jeff.londa@ogletree.com

And

BUSTOS LAW FIRM, P.C.
Fernando M. Bustos
State Bar No. 24001819
fbustos@bustoslawfirm.com
Benjamin E. Casey
State Bar No. 24137943
bcasey@bustoslawfirm.com
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

LOCAL COUNSEL FOR PLAINTIFFS

**TABLE OF CONTENTS**

Page

**INTRODUCTION** ............................................................................................................... 1

**ARGUMENT** ....................................................................................................................... 1

    **I.**    **Plaintiff associations have alleged associational standing.** ............................... 1

    **II.**   **Plaintiffs have alleged harm from the secondary construction sites provisions of the Final Rule.** ............................................................................. 7

    **III.**  **JLM has standing to challenge the secondary construction sites provision.** .......................................................................................................... 8

    **IV.**  **Plaintiffs have alleged a cognizable claim under the Regulatory Flexibility Act.** ................................................................................................... 9

    **V.**   **If the Court concludes any of Plaintiffs' allegations are deficient, Plaintiffs request leave to amend.** ................................................................... 11

**CONCLUSION** ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*APFA Inc. v. UATP Mgmt. LLC*,
   No. 4:21-cv-00108O, 2021 WL 1814695 (N.D. Tex. May 6, 2021) ........................................2

*Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.*,
   315 F.Supp.3d 282 (D.D.C. 2018) ..........................................................................................9

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
   695 F.3d 330 (5th Cir. 2012) ................................................................................................6, 7

*Greater Dallas Home Call All. v. United States*,
   36 F.Supp.2d 765 (N.D. Tex. 1999) ........................................................................................9

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
   487 F. App'x 189 (5th Cir. 2012) .........................................................................................1, 5

*Louisiana State Conference of National Association for Advancement of Colored
   People v. Louisiana*,
   490 F.Supp.3d 982 (M.D. La. 2020) ....................................................................................2, 3

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992) ..............................................................................................................1

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................1, 2

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ...................................................................................................6

*National Federation of Independent Business v. Perez*,
   No. 5:16-CV-00066-C, 2016 WL 3766121 (N.D. Tex. June 27, 2016) .................................10

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ...................................................................................................5

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................................5, 6

*Thompson v. Clark*,
   741 F.2d 401 (D.C. Cir. 1984) ...............................................................................................10

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
   No. 4:20-CV-973-SDJ, 2021 WL 5003274 (E.D. Tex. Oct. 28, 2021) ...................................2

**Federal Statutes**

5 U.S.C. § 603(a) ...................................................................................................................9

**Rules**

Federal Rule of Civil Procedure § 15(a) .............................................................................10

FRCP 15(a)(2)......................................................................................................................10

Rule 12(b)(1)....................................................................................................................1, 5

**Regulations**

88 Fed. Reg at 57733 ...........................................................................................................8

# INTRODUCTION

Plaintiffs Associated General Contractors of America ("AGC"), Associated General Contractors of Texas ("Texas AGC"), Lubbock Chamber of Commerce (collectively "Plaintiff associations"); and J. Lee Milligan, Inc. (collectively "Plaintiffs") oppose Defendants' Partial Motion to Dismiss First Amended Complaint (FAC) (ECF No. 5). Plaintiffs have adequately alleged Article III standing to maintain this action. Plaintiffs have also adequately alleged a cause of action under the Regulatory Flexibility Act (RFA). Accordingly, Defendants' motion must be denied.

# ARGUMENT

## I. Plaintiff associations have alleged associational standing.

Defendants contend that Plaintiff associations have not sufficiently alleged associational standing because the FAC "does not identify a single member of AGC, AGC Texas, or Lubbock Chamber who has been or would be harmed."  (ECF No. 21, p. 11.)  That is a false standard of review for pleading associational standing. To the contrary, an association need not "set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." *Hancock Cnty. Bd. of Supervisors v. Ruhr,* 487 F. App'x 189, 198 (5th Cir. 2012).

Defendants cite the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), where the Supreme Court considered the sufficiency of affidavits submitted at the summary judgment stage. The United States Supreme Court has cautioned litigants that "*Lujan*, since it involved the establishment of injury in fact ***at the summary judgment stage***, required specific facts to be adduced by sworn testimony; ***had the same challenge to a generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful***."

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (emphasis added).  Indeed, *Lujan* itself instructs that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  504 U.S. at 561 (quoting *Lujan*).  Indeed, district courts in this circuit routinely hold that "such proof is not required at the pleading stage." *Young Conservatives of Tex. Found. v. Univ. of N. Tex.,* No. 4:20-CV-973-SDJ, 2021 WL 5003274, at *4 (E.D. Tex. Oct. 28, 2021); *see also, e.g., APFA Inc. v. UATP Mgmt. LLC*, No. 4:21-cv-00108O, 2021 WL 1814695, at *5 (N.D. Tex. May 6, 2021) and *Louisiana State Conference of National Association for Advancement of Colored People v. Louisiana*, 490 F.Supp.3d 982, 1012-1013 (M.D. La. 2020).

Plaintiffs have set forth the necessary facts to establish associational standing at the pleading stage, including, but not limited to:

- "Plaintiffs AGC of America, AGC of Texas, and the Lubbock Chamber have contractor members that perform work on projects which are subject to the DBA, and historically, such contractor members have relied and rely in whole or in part upon bid advertisements and contracts to determine whether the project is subject to the DBA."  FAC ¶ 18.

- "*Many of these contractor members provide construction services as a prime contractor or subcontractor* and also maintain material supply services that sell and deliver construction materials to other third-party contractors.  Such contractor members also provide materials on those federal and federally funded projects on which the member contractor performs services *as a prime contractor or subcontractor*."  *Id*. (emphasis added).

- "Many of these contractor members transport construction materials to and from federally funded projects subject to the DBA on which they will also bid and contract to perform on-site construction services.'" *Id*.

- "Some of these contractor members purchase structures for specific use and installation on a DBA-covered project. Those structures may be manufactured at an off-site facility that is dedicated exclusively, or nearly so, to the performance of a DBA contract or project for a specific period of time lasting weeks, months or more**.**" *Id*.

- "**These contractor members are also subject to investigation by federal contracting agencies and the DOL regarding compliance with the Final Rule, and accordingly are subject to demand for the payment of back wages for the non-compliance with the DBA by themselves and lower-tiered subcontractors, withholding and cross-withholding, and debarment**." *Id.* ¶ 19 (emphasis added).

- "Prime contractors and subcontractors are subject to significant consequences for failing to comply with the DBA. Prime contractors are strictly liable for back wages owed to its employees or employees of any subcontractor on the project." *Id.* ¶ 53.

- "Prime contractors are also subject to withholding from payment due from a contracting agency where the contracting agency determines there are amounts due and unpaid to workers because of DBA violations." *Id*. ¶ 54.

- "Prime contractors and subcontractors are also subject to debarment proceedings where found by the DOL to be in "disregard of the contractor's "obligations to employees or subcontractors," and may be ineligible to participate in any DBA contracts for a period of up to three years." *Id*. ¶ 56.

- "The Final Rule provision imposing the DBA requirements by operation of law will have an irreparable and financially crippling impact on prime contractors and contractors that are determined to have performed contracts which are later determined to be subject to the DBA. Such contractors will be subject to the demands for back wages, withholdings, and debarment by the very federal agencies, erroneously, that the DBA did not apply to in the first place." *Id*. ¶ 57.

- "The Final Rule provision expanding the DBA to apply to material suppliers by virtue of the sole fact that the materials suppliers are operated by a contractor or subcontractor will irreparably harm those contractors by placing such contractors at a competitive disadvantage with their material supply competitors that provide materials services only because those contractors must compensate the material supplier worker DBA-required wages for all on-site work. *Id*. ¶ 58.

- "Prime contractors and contractors will be irreparably harmed by the Final Rule provision expanding the DBA to include activities conducted by a truck driver or truck driver's assistant on the site of the work, where the driver or driver's assistant's time spent on the site of the work is not *de minimis*, because the provision imposes an unspecified standard and unreasonable recordkeeping requirements on such contractors." *Id*. ¶ 59.

- "Prime contractors and subcontractors will be irreparably harmed by the Final Rule provision that expands the DBA to cover permanent manufacturing facilities which were not established for contract performance, solely upon the basis that they are dedicated, or nearly so, for a specified period of time spanning weeks or months to

the manufacturing of structures or other elements that are to be installed at the site of the construction. *Id*. ¶ 60.

Although these allegations and the others contained in the FAC are more than enough to satisfy the pleading standards, Defendants argue that even more factual detail is required, specifically that Plaintiffs "'make[s] specific allegations establishing that at least one *identified* member had suffered or would suffer harm." (ECF No. 21, p. 1 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added).)  Defendants argue that Plaintiff associations have not identified a particular member that has been or would be harmed.  (ECF No. 21, p. 11.) But Plaintiff associations have alleged that *many* of their respective members will be harmed, namely those contractor members who work as prime contractors and subcontractors on projects governed by the DBA.  FAC ¶¶ 19, 51-60.

At the pleading stage, an associational plaintiff's allegations of a concrete injury to its members are sufficient to confer associational standing. *See Hancock Cnty.*, *supra* at 198, ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on lack of associational standing."); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 611–12 (5th Cir. 2017).

The cases relied upon by Defendant were not cases challenged at the initial pleadings stage. Defendants, for example, rely on *Summers* for the proposition that organizational plaintiffs need to identify specific members who have suffered harm.  In *Summers*, standing was not challenged at the pleading stage, but after the trial court granted a preliminary injunction and then a nationwide injunction based on the plaintiff's factual showing, including affidavits from members of the environmental groups.  *Summers*, 555 U.S. at 491, 494.  Consequently, the Supreme Court was

reviewing a full factual record when it observed that an organizational plaintiff may *ultimately* need to "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Id.* at 498.

Similarly, in *NAACP v. City of Kyle*, 626 F.3d 233 ( 2010), the Fifth Circuit found, on appeal following the district court's denial of declaratory and injunctive relief at trial, that several NAACP entities and a building associations lacked associational standing in their challenge that the city's revised zoning and subdivision ordinances governing new single-family residences violated the Fair Housing Act by causing the price of entry-level, single-family residences to increase, disparately impacting African–Americans and Hispanics by making new homes unaffordable to more African–American and Hispanic households than to Caucasian households. The Fifth Circuit concluded that there was "no evidence in the record showing that a specific member of the NAACP has been unable to purchase a residence in Kyle as a result of the revised ordinances that went into effect in 2003…. [and] no evidence showing when and how the revised ordinances may deprive a NAACP member of the opportunity to acquire a new residence in Kyle." *Id*. at 237.  Again, the determination of lack of standing was based upon a review of the full factual record after a trial.

Defendants' reliance on *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330 (5th Cir. 2012) is also unavailing.  *Funeral Consumers* involved an antitrust class action suit against the largest national casket manufacturer and the three largest funeral home chains and distributors of the manufacturer's caskets, alleging they conspired to foreclose competition from independent casket discounters who sold caskets directly to consumers at discounted prices. Following the denial of class certification and the plaintiffs' settlement with one of defendants, the non-settling defendants filed a motion to dismiss for lack of subject matter jurisdiction, which was

granted by the district court, which determined that because of the settlement with the one defendant, plaintiffs had lost standing to continue to sue the remaining defendants. The Fifth Circuit affirmed the district's court ruling, which concluded that any harm would be reparable by a monetary award, like the settlement, and that the chance of one of the plaintiffs purchasing another a casket manufactured by the defendant and sold by one of the remaining funeral home defendants, which together controlled only 10% of the market, was "not sufficient to establish a real and immediate threat of future harm." *Id*. at 342-343.

In sum, through its FAC, Plaintiff associations allege that many of their contractors members perform work as prime contractors and subcontract on projects which are subject to the DBA (FAC ¶ 18); that Plaintiff association contractor members are subject to the specific DBA Final Rule provisions which are challenged by this action (FAC ¶ 18); and that such prime contractors and subcontracts will be injured and suffer irreparable harm as a result of these Final Rule provisions (FAC ¶¶ 19, 52-60). Pursuant to precedent from the Supreme Court and Fifth Circuit, Plaintiff associations are not required to identify specific members, to provide affidavits, or to provide summary-judgment-type evidence at this stage of the proceedings. *Lucas*, 505 U.S. at 1012, n. 3; *OCA-Greater Houston*, 867 F.3d at 611-12; *Hancock Cnty.*, 487 F. Appx. at 198.

## II. Plaintiffs have alleged harm from the secondary construction sites provisions of the Final Rule.

Defendants argue that Plaintiff associations have not alleged harm from the secondary construction site provisions of the Final Rule involving work at permanent fabrication facilities, contending that this Final Rule provision is only an "incremental change" to the pre-Final Rule version of the regulation, and Plaintiff associations have alleged only that "[s]ome of [their] contractor members purchase structures []" and that "[t]hose structures *may* be manufactured at an off-site facility that is dedicated exclusively, or nearly so, to the performance of a DBA contract

or project for a specified period of time lasting weeks, months, or more." (EFC No. 21, p. 12.) Defendants contend such impact on Plaintiffs members is uncertain. Defendants' contentions are without merit.

The specific nature of the Final Rule provision expanding the DBA permanent manufacturing facilities is itself uncertain and creates the practical, real-world concern and harm to Plaintiffs' members that a permanent fabrication facility may initially not meet the definition of a covered secondary construction site because it is not "dedicated exclusively, or nearly so, to the performance" of a covered contract but then becomes a covered facility during the course of the project. *See* Final Rule, 88 Fed. Reg at 57733. Specifically, the regulation triggers DBA coverage upon *the duration of time* the permanent fabrication facility is dedicated exclusively, or nearly so, to the performance of a covered DBA contract. An initially non-covered permanent facility could be become a covered facility during the course of the project if the facility is dedicated exclusively, or nearly so, to the performance of a covered DBA project for "a period of weeks, months, or more." *Id*. Such a circumstance could result from several causes beyond the prime contractor or subcontractor's control or knowledge including, for example, where the owner of the permanent fabrication facility ends up using the facility for only the DBA covered contract, because the fabrication orders for other customers are cancelled or delayed. In short, the uncertain application of the regulation itself presents a harm to the Plaintiff association members.

**III.    JLM has standing to challenge the secondary construction sites provision.**

Defendants contend that Plaintiff JLM does not have standing to challenge the Final Rule's secondary construction site provisions because the FAC does not allege that JLM constructs significant portions of buildings at secondary sites. (EFC No. 21, at p. 13.) Defendants' contentions fail. The secondary construction site provision at issue is not limited to "buildings" but extends to other types of projects as well. In pertinent part, the Final Rule defines a "significant

portion" as "one or more entire portion(s) or module(s) of the building or work, such as a completed room or structure, with minimal construction work remaining…" Final Rule, 88 Fed. Reg. at 57733. Here, Plaintiff JLM alleges that it is a "heavy and highway construction contractor," that performs construction work "on federally funded, state funded, and privately funded projects." FAC, ¶ 13. Such work necessarily includes the installation of items manufactured at permanent fabrication facilities meeting the definition of a secondary construction site under the Final Rule. Further, Plaintiff JLM alleges that it "performs work as a prime contractor and subcontractor." Accordingly, in its capacity as a prime contractor, Plaintiff JLM is also directly impacted where any subcontractor contracted by JLM, including any subtier subcontractor purchases or installs any items manufactures at a permanent fabrication facility meeting the definition of a secondary construction site under the Final Rule. Thus, Plaintiff JLM has alleged standing to challenge the secondary construction sites provision.

**IV.     Plaintiffs have alleged a cognizable claim under the Regulatory Flexibility Act.**

Defendants contend that the RFA claims should be dismissed because none of the Plaintiffs have adequately alleged they are small entities entitled to maintain an RFA claim. (ECF No. 21, p. 17.) Defendants' contention is without merit. Here, Plaintiffs plainly alleged in the FAC that "Lubbock Chamber members include many small entities within the meaning of the Regulatory Flexibility Act (RFA). (FAC ¶ 12). As Defendants concede, "associations can sue on behalf of their small-entity members in a representational capacity under the RFA," *citing Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.*, 315 F.Supp.3d 282, 287 (D.D.C. 2018) ("RFA's requirements only apply to "small entities that would be directly regulated" by a challenged rule"). Here, Defendants do not dispute that Plaintiff Lubbock Chamber of Commerce represents numerous companies that meet the RFA definition of "small entity." Plaintiff associations have alleged that they have contractor members that perform work on projects which are subject to the DBA and

that may of their respective members "have standing to bring this suit in their own right." (FAC ¶¶ 18, 19). Such members "fall within the zone of interests protected by the RFA." *See Cal. Cattlemen's Ass'n*, supra at 287, citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, (2014) ( "[T]he 'zone of interests' test is not meant to be 'especially demanding,' "but to prevent suits when a "plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit").

Defendants also contend that Plaintiffs have impermissibly attacked substantive, not procedural aspects of the DOL's RFA analysis. (ECF No. 21, p. 14.) As alleged in the First Amended Complaint, Plaintiffs have adequately alleged a claim under the RFA, together with reference to the APA. *See* (FAC ¶¶ 82-88.) The RFA is designed to protect small businesses by requiring federal agencies to consider the potential impact of federal regulations on small businesses. *See Greater Dallas Home Call All. v. United States*, 36 F.Supp.2d 765, 768 (N.D. Tex. 1999). To that end, the RFA requires an agency that has proposed a rule to prepare and make available for public comment an initial and final regulatory flexibility analysis. The initial flexibility analysis "shall describe the impact of the proposed rule on small entities." 5 U.S.C. § 603(a). The final regulatory flexibility analysis, which is provided in connection with the promulgation of a final rule, requires a description of (i) "the reasons why action by the agency is being considered," (ii) "a succinct statement of the objectives of, and legal basis for, the proposed rule," (iii) "a description of and, where feasible, an estimate of the number of small entities to which the proposed rule will apply," and (iv) "a description of any significant alternatives to the proposed rule which accomplish the stated objectives of applicable statutes and which minimize any significant economic impact of the proposed rule on small entities." *Id*. § 603(b)-(c).

Agencies must also respond to any concerns raised by the Small Business Administration through its Office of Advocacy. *Id*. § 604(a)(3). Courts have found regulations invalid under the RFA where a federal agency's final regulatory flexibility analysis, along with the rest of the record, demonstrates that the rule constitutes such an unreasonable assessment of burdens and benefits imposed upon small business as to be arbitrary and capricious. *See Thompson v. Clark*, 741 F.2d 401, 405 (D.C. Cir. 1984). *See also, National Federation of Independent Business v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at 38 (N.D. Tex. June 27, 2016). The FAC alleges an unreasonable assessment of burdens which is arbitrary and capricious to small businesses. FAC ¶¶ 12, 82-88.

Here, Plaintiffs have alleged facts identified several ways in which the Department of Labor failed to satisfy the RFA requirements. Such efforts by the Department to comply with the RFA and APA requirements are properly and sufficiently alleged.

**V.    If the Court concludes any of Plaintiffs' allegations are deficient, Plaintiffs request leave to amend.**

Federal Rule of Civil Procedure 15(a) states a court "should freely give leave when justice so requires." FRCP 15(a)(2). Here, Plaintiffs request leave to amend in the event the Court concludes any of the allegations in the First Amended Complaint are deficient.

## CONCLUSION

Plaintiffs have alleged sufficient facts to establish associational standing to challenge the Final Rule. Plaintiffs have also alleged sufficient facts to establish their RFA claim. The partial motion is without merit and should be denied.

DATED:      April 17, 2024.

Respectfully submitted,

*/s/ Robert R. Roginson*

Robert R. Roginson
CA Bar No. 51437
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 S. Hope Street, Suite 1200
Los Angeles, California 90071
213.457.5873 Direct
robert.roginson@ogletree.com
*Admission Pro Hac Vice*
LEAD COUNSEL FOR PLAINTIFFS

Jeffrey C. Londa
State Bar No. 12512400
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas 77002
Office: (713) 655-5750
Fax: (713) 655-0020
jeff.londa@ogletree.com

And

Fernando M. Bustos
State Bar No. 24001819
fbustos@bustoslawfirm.com
Benjamin E. Casey
State Bar No. 24137943
bcasey@bustoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

LOCAL COUNSEL FOR PLAINTIFFS