|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF TEXAS<br>LUBBOCK DIVISION | **FILED**<br>May 20, 2024<br>KAREN MITCHELL<br>CLERK, U.S. DISTRICT COURT |
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA; ASSOCIATED GENERAL CONTRACTORS OF TEXAS; LUBBOCK CHAMBER OF COMMERCE; and J. LEE MILLIGAN, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR and JULIE SU, in her official capacity as Acting U.S. Secretary of Labor,<br><br>        Defendants. | Case No. 5:23-cv-00272-C |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

For the reasons elaborated below, Plaintiffs have standing to bring suit, and are entitled to injunctive relief. Therefore, their Motion for Preliminary Injunction should be granted.

### ARGUMENT

I. **Plaintiffs Have Standing.**

Plaintiffs have properly alleged in their First Amended Complaint that Plaintiffs and their members have suffered an injury in fact which is concrete and particularized. For the additional reasons detailed in Plaintiffs' Response to Defendants' Partial Motion to Dismiss, Plaintiffs in fact have standing to sue, and have properly alleged their standing. Dkt. 26, pp. 1-7.

II. **Plaintiffs will likely succeed on the Chevron Step 1 challenge because the challenged Final Rule provisions violate the plain and unambiguous language of the DBA.**

As set forth in Plaintiffs' opening brief, none of the challenged Final Rule provisions pass step 1 of the *Chevron* analysis. Dkt. 20, pp. 4-11. Each violates the APA because it is "in excess

of statutory jurisdiction, authority, or limitations, or short of statutory right[s]." 5 U.S.C. § 706(2)(C).

### A.    The Final Rule operation-of-law provision contradicts the DBA.

Defendants fail to dispute that the Final Rule provisions applying the DBA by operation of law contradict the plain language of the DBA, relying instead on federal contracting doctrine involving other non-wage federal statutes. Dkt. 27, pp. 16-19. The DBA expressly requires that public federal bid advertisement specification and contracts contain specified provisions concerning the minimum wages to be paid to the laborers and mechanics employed directly on the site of the work by contractors and subcontractors. *See* 40 U.S.C. §§ 3142(a), (c). The operation-of-law provisions do not give contractors sufficient notice of the applicability of DBA requirements, and this lack of notice is not consistent with basic contract and procedural due process principles. *See* 29 C.F.R. § 5.5(e); Final Rule, 88 Fed. Reg. at 57739.

Defendants rely substantially on application of the *Christian* doctrine to support the operation-of-law provision  *See* Dkt. 27, at p. 16-18, *citing K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719 (Fed. Cir. 2018) and *G.L. Christian & Assocs v. United States*, 312 F.2d 418 (Ct. Cl. 1963). This reliance is unavailing. Most significantly, the United States Supreme Court rejected application of the *Christian* doctrine to the DBA as "misplaced," noting that the DBA is "not self-implementing." *Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 784 n. 38 (1981).[1] In *Coutu*, the Court considered whether the DBA conferred upon an employee a private right of action for back wages under a contract that has been administratively determined not to call for Davis-Bacon work and which thus does

---

[1] The Armed Services Board of Contract Appeals has reached the same conclusion ("The Davis-Bacon Act is not self-implementing") in rejecting arguments that the DBA can be read into a contract under *Christian*. *BellSouth Commc'ns Sys., Inc.*, ASBCA No. 45955, 94-3 BCA ¶ 27,231 ("This is not a case where the Act was clearly applicable at time of award, and where the omission of the required clauses and wage determinations was a mere administrative oversight.").

Plaintiffs' Reply Brief in Support of
Motion for Preliminary Injunction                                                                                                Page 2

not contain a prevailing wage stipulation. The Court held that no such private right action exists. *Id.* at 784. There, the Court assessed the statutory text and legislative history and purpose of the DBA, recognizing the "elaborate administrative scheme" promulgated under the Act to introduce "consistency into the administration and enforcement of the Act and related statutes." *Id*. at 783.

The Court reasoned that recognizing such a private right of action under those circumstances "would severely disrupt federal contracting" because it would allow post-contract court determinations concerning application of the DBA to lead to increased wages on cost-plus contracts and increased bids on fixed contracts. *Id.* at 783-84. The Court also noted that post-contract challenges would disrupt timely and efficient performance of government contracts. *Id*. at 783. In particular, the Court recognized that allowing a court to make a post contract determination whether a laborer or mechanic had been properly paid under the DBA would disrupt the balance Congress sought to strike when it passed the DBA:

> The Act thus carefully balances the interests of contractors and their employees. The contractor is able to "*know definitely in advance of submitting his bid what his approximate labor costs will be*," [], while the laborer or mechanic is given a right of action to enforce the stipulated wages. To imply a private right of action to sue for Davis-Bacon wages under a contract that does not contain prevailing wage stipulations would destroy this careful balance.

*Id*. at 782 (emphasis added). The Court's concerns then about post-contractual determinations regarding whether the Act applies to a specific project apply even more forcefully to the operation-of-law provision. The operation-of-law provision substantially impacts all phases of the government contracting. On the bidding process, federal agencies will be expected to rely upon the operation-of-law provision and avoid specifying whether the DBA contract clauses and wage decisions are included, thereby eliminating the ability of the bidding contractors to "know definitely in advance of submitting his bid what his approximate labor costs will be." *Id*.

The operation-of-law provision adds considerable uncertainty for all bidders as to what the contract terms may be and which specific wage decision applies. Most significantly, this operation-of-law provision imposes the real-world challenges on those many prime contractors who contract with and pay subcontractors, including lower-tiered subcontractors, for work performed and completed before it is determined or certain that the DBA requirements apply. Such prime contractors will invariably be unable to obtain evidence from all subcontractors that the affected workers were paid DBA wages. Defendants gloss over these significant challenges by contending the Final Rule provides that prime contractors will be compensated for any increases in their wages. Such compensation, however, is not assured and may be contingent upon the federal agency taking action to incorporate the DBA contract clauses and wage decisions into the applicable contract. *See* 29 CFR § 5.6(a)(2). Final Rule, 88 Fed. Reg. at 57739. In sum, the text of the DBA and Congressional intent is clear. The DBA expressly requires that that the DBA contract clauses be include in the bid advertisement specifications. [2] [3]

**B. The Final Rule truck driving provision contradicts the DBA.**

The Final Rule trucking provision (29 C.F.R. § 5.2; Final Rule, 88 Fed. Reg. at 57732)[4] challenged herein impermissibly conflicts with the statute, which defines its coverage as limited to "construction, alteration, or repair, including painting and decorating, of public buildings and public

---

[2] Defendants' reliance on *United States v. Mississippi Power & Light Co.*, 638 F.2d 899 (5th Cir. Unit A 1981) is misplaced. *Mississippi Power & Light* concerned a regulation to give force to an executive order, not a congressional act, mandating contractors to take affirmative action to ensure equal opportunity. Such a mandate is hardly akin to requiring compliance with the comprehensive and elaborate administrative wage mandate required under the DBA.

[3] Defendants' reliance on *U.S. ex rel. DLI, Inc. v. Allegheny Jefferson Millwork, LLC.*, 540 F.Supp.2d 165 (D.D.C. 2008) is also unavailing. *Allegheny* involved a construction contract dispute concerning the construction of a federal courthouse in Washington, D.C. None of the parties disputed that the DBA applied to the project and to all the related contracts and subcontracts; the question whether the DBA provisions become part of the contract by operation of law is lawful was not considered or addressed by the court. *Id*. at 176.

[4] "Onsite activities essential or incidental to offsite transportation," defined as activities conducted by a truck driver or truck driver's assistant on the site of the work that are essential or incidental to the transportation of materials or supplies to or from the site of the work, such as loading, unloading, or waiting for materials to be loaded or unloaded, but only where the driver or driver's assistant's time spent on the site of the work is not de minimis.

works . . . ." 40 U.S.C. § 3142(a). Truck drivers performing material delivery duties are not de facto "mechanics and laborers employed directly on the site of the work." *Id*. § 3142(c)(1). *See Bldg. and Constr. Trades Dep't AFL-CIO v. United States Dep't of Lab. Wage Appeals Bd*., 932 F.2d 985, 992 (D.C. Cir. 1991) ("*Midway*") and *H. B. Zachary Co. v. United States*, 344 F.2d 352, 361 (Ct. Cl. 1965). The *Midway* court's treatment of this issue is instructive. In *Midway*, the court concluded that material transportation drivers were not covered under the DBA because Congress intended that the location of an employee's job was determinative of the DBA's coverage, and that the DBA "covers only mechanics and laborers who work *on the site* of the federally-funded public building or public work, not mechanics and laborers employed *off-site*, such as suppliers, materialmen, and material delivery truckdrivers." *Midway*, 344 F.2d at 992. The court also concluded that "Material delivery truckdrivers who come onto the site of the work merely to drop off construction materials are not covered by the Act *even if they are employed by the government contractor*." *Id*. (emphasis added).

In *Midway*, the material delivery truckdrivers came on-site for only ten minutes at a time to drop off their deliveries. Their time spent "directly upon the site of the work" constituted only ten percent of their workday. *Id*. at 992 n.5. Here, in assessing the truck driver provision at issue, it is necessary to consider the statute's language "directly on the site of the work" in relation to the long-recognized material transportation exclusion.[5] The essence of the material delivery exemption is the *function* that is being performed. *See Midway*, 932 F.2d 985*; H.B. Zachry*, 344 F.2d 352. That function is not a "construction" one within the meaning of the Act. Thus, the *Zachry* court concluded that certain material delivery truckdrivers should be excluded from the Act's coverage

> because of the nature of the function [the truckdrivers] performed, namely, the delivery of standard materials to the site - *a function which is performed independently of the contract construction activities*. We think this decision is a

---

[5] *See* Opposition at p. 10 ("The DBA does not expressly address material suppliers, but material suppliers have long been understood to be excluded from the DBA coverage because they are not 'contractor[s] or subcontractor[s].'" 88 Fed. Reg. at 57,615.")

> logical extension of the congressional intent to exclude employees of materialmen from the coverage of the Davis-Bacon Act.

*Zachry*, 344 F.2d at 361 (emphasis added.) The court in *Midway* cited the *Zachry* "functional" analysis with approval, and used it to conclude that material delivery truck drivers in the direct employ of a federal construction contractor were not covered under the DBA. *Midway*, 932 F.2d at 992.

Contrary to Defendants' contentions, such identical tasks do not become "construction, alteration, or repairs" simply because they are performed by an employee of a contractor. *Midway*, 932 F.2d at 992. Further, such an interpretation leads to absurd results. Specifically, such an interpretation will invariably lead to drivers gaming the system, incentivizing a driver to delay on-site deliveries in order to spend additional time on the job site in the hopes that she or he would spend sufficient time to become entitled to DBA wages. Also, for compliance purposes, it is also almost entirely impossible to predict in the natural ebb and flow of the construction process whether a driver will over the course of the workweek be spending more than a *de minimis* time on the project site. A driver may be scheduled to make only one or two deliveries to a job site during the course of the project, which are expected to last only a few minutes each delivery. Such a standard is impractical and absurd. In sum, this Final Rule trucking provision is directly contrary to the holding in *Midway* and contrary to the plain language of the Act.

    **C.**    **The Final Rule provision applying the DBA to material suppliers operated by contractors or subcontractors contradicts the DBA.**

For similar reasons, the Final Rule provision applying the DBA to material suppliers operated by contractors or subcontractors contradicts the plain language of the DBA and the well-established case law interpreting the material supplier exception. Again, the essence of the material delivery exemption is the *function* that is being performed by the worker. *See Midway*,

932 F.2d 985; *H.B. Zachry*, 344 F.2d 352. The function of material supply is not "construction" within the meaning of the Act. Simply put, there is no statutory basis for the distinction the DOL draws with its Final Rule between material suppliers and other types of subcontractors who pick up and transport material away from a construction job site. The DOL contends that the new "bright-line rule" is easier to apply and will facilitate compliance. *See* Dkt. 27, p. 11, n.11. The rule, however, *overreaches* by impermissibly ceases to focus on the specific duties performed by the worker, and whether such duties constitute construction, alteration, completion or repair work, and instead reclassifies all such workers as laborers and mechanics subject to the DBA *simply and only* because the company is performing some other work under the contract as a subcontractor, where such other works are clearly entitled to DBA wages. Such an all-or-nothing rule is not consistent with the text of the DBA, which requires that the contractor and subcontractor to pay DBA wages to "all mechanics and laborers employed directly on the site of the work," and directly conflicts with *Midway*.

Defendants contend that the Final Rule is consistent with long-time guidance and case law, citing the DOL's long reliance on *Clifford F. MacEvoy Co., v. Unites States*, 322 U.S. 102 (1994).[6] *MacEvoy* distinguished a "subcontractor" from "materialmen" under the Miller Act, the federal law requiring federal prime contractors on certain projects to use performance bonds and payment bonds to ensure that contracts are completed correctly and that all subcontractors and material suppliers are paid. *MacEvoy*, 322 U.S. at 109-11; 40 U.S.C. §§ 3131–3134. The Davis-Bacon and Miller Acts have different and independent aims, whereas both *Midway* and *Zachary* deal specifically with the material supplier exception. Defendants' focus solely on the role played by the company to determine material supplier or contractor status misinterprets *MacEvoy*, in which

---

[6] The DOL cites to several older DOL opinion letters and agency memoranda, including DOL Wage and Hour Division All Agency Memorandum 5 (Dec. 26, 1957), citing *MacEvoy*.

"the Court adopted a *functional* . . . definition for the term subcontractor." *F. D. Rich Co. v. United States ex rel Indus. Lumber Co.*, 417 U.S. 116 (1974) (emphasis added). This approach is consistent with *Midway*, which instructs that the principle inquiry in assessing whether a specific worker is entitled to DBA wages is the *function* of the worker.

The Final Rule unfairly and impermissibly discriminates against those bona fide material suppliers that meet the elements of the material supplier exception with respect to such workers who also operate on the contract as contractors employing workers on the project who are performing construction work and accordingly, are laborers or mechanics. If two material suppliers were performing the exact same type of material supply services, yet one company also employed some workers who were performing construction work, the one performing construction work would be at a competitive disadvantage because it would necessary be required to treat its workers performing bona fide material supply duties as laborers or mechanics. This is not consistent with the Act, or the principles set forth in *Midway*.

The Final Rule's application of the DBA to material suppliers that are operated by contractors or subcontractors ignores the statutory language of the DBA, essentially determining that a bona fide material supplier will be considered covered by the DBA based simply upon its connection to a contractor or subcontractor. 88 Fed. Reg. at 57,626. The Final Rule in this regard amounts to a substantive amendment to the DBA, and one which would reclassify employees of bona fide material suppliers as "mechanics and laborers," in a manner clearly contrary to the plain language of the DBA. Only an Act of Congress can do this. It cannot be done by executive fiat.

> **D.  Plaintiffs will likely succeed on their claim that challenged Final Rule provisions violate the Regulatory Flexibility Act (RFA).**

Defendants assert two challenges to Plaintiffs' RFA claim: (1) the RFA is only procedural in nature, and its simple requirements have been easily met; and (2) Plaintiffs failed to allege they include "small entities" to invoke the RFA. Defendants are wrong on both points.

For the reasons stated in Plaintiffs' Response to Defendants' Partial Motion to Dismiss, Plaintiffs clearly plead that Plaintiff Lubbock Chamber of Commerce includes among its members many small businesses who can invoke the RFA. Dkt. 5, ¶ 12. Defendants also conceded in their Partial Motion to Dismiss that "associations can use on behalf of their small entity members in a representational capacity under the RFA. Dkt. 21, p. 17 (citing *Cal. Cattlemen's Ass'n. v. U.S. Fish & Wildlife Serv.*, 315 F. Supp. 3d 282, 287 (D.D.C. 2018)).

Agencies must also respond to any concerns raised by the Small Business Administration through its office of Advocacy. *Id.* § 604(a)(3). Courts have found regulations invalid under the RFA where a federal agency's final regulatory flexibility analysis, long with the rest of the record, demonstrates that the rule constitutes such an unreasonable assessment of burdens and benefits imposed upon small business as to be arbitrary and capricious. *See Thompson v. Clark*, 741 F.2d 401, 405 (D.C. Cir. 1984). *See also, National Federal of Independent Business v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *38 (N.D. Tex. June 27, 2016). The FAC alleges an unreasonable assessment of burdens which is arbitrary and capricious to small businesses. FAC ¶¶ 12, 82-88.

**III.  Plaintiffs' members will suffer irreparable harm if the rule is not enjoined.**

As described more fully in Plaintiffs' Opening Brief, the challenged Final Rule provisions will irreparably harm prime contractors and contractors working on contracts subject to the Final Rule. Defendants state that the operation-of-law provision does not expose contractors to back

wages, withholdings, and debarment, contending that in the event the DBA provisions are wrongly omitted, the prime contractor will be compensated for any increase in wages. Defendants overlook the heart of the problem with the operation-of-law provision; even in circumstances where the DBA contract provisions are added into the contract after a determination that they were incorrectly omitted, the prime contractor must still comply fully with the DBA back to the start of the contract, including all the new recordkeeping obligations. 88 Fed. Reg. at 57,662-63. Depending upon the length of the contract before the DBA application was discovered, several of the subcontractors on the project may have completed their work, received payment, and it will not be possible for the prime contractor to ensure all affected workers are paid.

**IV.   A nationwide injunction is warranted.**

Plaintiffs agree, as they must, that each of the challenged provisions operate independently from one another and are severable. Each challenged portion, however, impermissibly conflicts with the DBA and must be enjoined on a national basis. As recognized by the Supreme Court in *Coutu*, the DBA is an elaborate administrative scheme requiring consistency in its administration and enforcement. *Coutu*, 450 U.S. 754 at 783. A national injunction is warranted to ensure consistency in the administration and enforcement of the Act. A limited injunction would lead to confusion among the federal contracting community insofar as both federal agencies, AGC contractors, and other many other contractors individually operate nationally and frequently in different parts of the country for different agencies at the same time. Without a national injunction, it would be impossible to determine which agencies, contracts, or contractors are impacted.

## PRAYER FOR RELIEF

Plaintiffs pray that the status quo ante be preserved and that Defendants be preliminary enjoined from implementing and enforcing DOL's new and challenged Final Rule provisions.

DATED:        May  15, 2024.

        Respectfully submitted,

        */s/ Robert R. Roginson*

Robert R. Roginson
CA Bar No. 51437
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 S. Hope Street, Suite 1200
Los Angeles, California 90071
213.457.5873 Direct
robert.roginson@ogletree.com
*Admission Pro Hac Vice Pending*
LEAD COUNSEL FOR PLAINTIFFS


Jeffrey C. Londa
State Bar No. 12512400
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas 77002
Office:  (713) 655-5750
Fax: (713) 655-0020
jeff.londa@ogletree.com

And

Fernando M. Bustos
State Bar No. 24001819
fbustos@bustoslawfirm.com
Benjamin E. Casey
State Bar No. 24137943
bcasey@bustoslawfirm.com

BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

LOCAL COUNSEL FOR PLAINTIFFS